IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COZZINI BROS., INC., | |
| Plaintiff, | No. 20-cv-04274 |
| v. | Judge John F. Kness |
| THE CINCINNATI INSURANCE COMPANY, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cozzini Bros, Inc., a commercial knife sharpener, generates most of its business from sharpening knives for restaurants. Predictably, the onset of the COVID-19 pandemic in early 2020 and the ensuing restaurant shutdown severely blunted Plaintiff's business; after all, shuttered restaurants do not need *any* knives, sharp or dull. These dire financial consequences prompted Plaintiff to file a claim with its insurer, Defendant The Cincinnati Insurance Company, Inc., for loss of business income under a commercial general liability policy. When Defendant denied Plaintiff's claim, Plaintiff sued for breach of contract. Defendant now moves to dismiss the complaint and argues that coverage is not required under the plain language of the Policy. As explained below, because the world-altering events of the COVID-19 pandemic—although indisputably damaging—are not covered under the relevant policy, Plaintiff's complaint fails to state a viable claim. Accordingly, Defendant's motion to dismiss is granted.

I.  **BACKGROUND**

Plaintiff operates a cutlery service business that rents and sharpens knives for restaurants, grocery stores, supermarkets, and commercial kitchens. (Complaint ("Compl."), Dkt. 1 ¶ 2.) In early 2020, the COVID-19 disease erupted into a worldwide pandemic and quickly spread across the United States. (*Id.* ¶ 9.) To stem the spread of the SARS-CoV-2 virus that causes COVID-19, several states and municipalities implemented orders ("Shutdown Orders") prohibiting and restricting access to various businesses and facilities because of the actual or potential physical presence of the SARS-CoV-2 virus at those locations. (*Id.* ¶ 10.)

As a result of the physical presence of the virus at its facilities and its customers' facilities, Plaintiff incurred costs to slow and prevent the spread of the virus, including the cost of personal protective equipment and disinfecting its property. (*Id.* ¶ 14.) In addition, because of (1) the physical presence of the virus at these facilities and at Plaintiff's customers' places of business, (2) the pandemic's spread throughout the United States, or (3) the implementation of Shutdown Orders, a significant portion of Plaintiff's customers cancelled, suspended, or decreased the frequency of their knife rental and sharpening services, which in turn slashed millions of dollars of revenue from Plaintiff's books. (*Id.* ¶ 15.)

At the time of the shutdown, Plaintiff held an insurance policy with Defendant bearing an effective period of May 1, 2019 through May 1, 2020 ("the Policy"). (*Id.* ¶ 17, Exh. A at 2.) The Policy provided coverage for "direct physical loss or damage to covered property at 'covered locations' caused by a covered peril." (*Id.*, Exh. A at 80.)

The Policy also provided coverage for business interruption losses, including lost earnings and extra expenses incurred while access to "Covered Locations" was denied by order of "Civil Authority." (*Id.* at 158-59.)

On or about April 14, 2020, Plaintiff timely notified Defendant of a claim under the Policy for its losses stemming from the COVID-19 shutdown. (Compl. ¶ 43.) Asserting that the Policy did not provide coverage for Plaintiff's losses, Defendant denied the Claim on June 23, 2020. (*Id.* ¶ 47.) Plaintiff then brought this action in July 2020 for breach of contract. (Dkt. 1.) Defendant now moves to dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

*of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678-79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *See Ashcroft v. al-Kidd*, 562 U.S. 731, 742 (2011)

## III.  ANALYSIS

Plaintiff's complaint contains a single claim for breach of contract. (Compl. ¶¶ 49-53.) Plaintiff alleges the Policy constitutes a contract between the Parties and that Defendant breached that contract by denying Plaintiff's insurance claim. (*Id.*) Plaintiff asserts coverage under two of the Policy's provisions: the "Business Income" provision and the "Civil Authority" provision. (Dkt. 13 at 1.) Defendant argues that neither of those provisions apply and that it was within its contractual rights to deny Plaintiff's insurance claim. (Dkt. 21 at 1-2.)[1]

### A.  Business Income Provision

#### 1.  *Physical Loss or Damage*

The Policy's Business Income provision provides:

---

[1] Plaintiff also contends that the lack of virus exclusion in the Policy means that there must be coverage. (Dkt. 21 at 10-11.) But because none of Plaintiff's asserted coverage provisions applies, the Court need not address the lack of virus exclusion.

4

**Income Coverages**

> We provide [coverage for earnings and extra expense] . . . when your business is necessarily totally or partially interrupted. This "interruption" must be caused by direct physical loss or damage from a covered peril to a building or business personal property at "covered locations". . . .

(Dkt. 1-1 at 158) (emphasis added). A "covered location" is "any location or premises where [Plaintiff has] buildings, structures, or business personal property." (*Id*. at 78.)

The Parties dispute the meaning of "direct physical loss or damage" and whether the presence of the SARS-CoV-2 virus at Plaintiff's facilities can be considered a "physical loss." Defendant argues that Plaintiff fails to state a claim because it does not allege any "distinct, demonstrable, physical alteration of property." (Dkt. 13 at 7.) The mere presence of a virus, it contends, does not constitute a "direct physical loss to property" that would have triggered coverage. (*Id*.) And to the extent the virus was present at Plaintiff's insured facilities, the use of disinfectant products could have easily removed it and restored the property to its original, contagion-free state. (*Id*. at 10-11.)

Plaintiff, on the other hand, argues that it suffered "direct physical loss" because it was "deprived of the use of its physical property." (Dkt. 21 at 4.) It reads the term "loss" to include the "dangerous physical condition at [Plaintiff's] facility" and the corresponding "extra expenses" it incurred "to mitigate that danger through disinfection and preventative measures," as well as the loss of use of its property that resulted in "lost earnings for [Plaintiff]." (*Id*. at 5.)

5

Defendant's interpretation of "physical loss or damage" is the better reading. Although the noun "loss," standing alone, can refer to "depriv[ation] of . . . a possession," *see* LOSS, *Oxford English Dictionary* (2d ed. 1989) (def. 2a), the noun "loss" in the Business Income provision is modified by the adjective "physical," which, in this context, means "tangible, concrete." PHYSICAL, *Oxford English Dictionary* (3d ed. updated Mar. 2006) (def. 6); PHYSICAL, *Webster's Third New International Dictionary* (1961) (def. 2b) ("of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). Accordingly, " 'physical loss' refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost." *G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, No. 20 C 5644, 2021 WL 2853370, at *3 (N.D. Ill. July 8, 2021).

Plaintiff does not allege there was any physical change, alteration, or damage to its covered property that would satisfy the requirement of "direct physical loss or damage" and thus trigger coverage under the Policy. As several judges in this District have held, Plaintiff's purely economic loss does not constitute direct physical loss or damage to property. *See Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. Sept. 21, 2020) (the policy language of "direct physical loss" unambiguously requires some form of actual, physical damage to the insured's premises to trigger coverage); *T&E Chicago, LLC v. The Cincinnati Ins. Co.*, No. 20 C 4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020) (loss of use of property without any physical change to that property cannot constitute direct physical loss or

6

damage to the property). Because Plaintiff did not suffer direct physical loss or damage to its premises, Defendant did not owe coverage.

To be sure, at least one other decision in this District has interpreted a similar "physical loss" provision to cover business income losses caused by government-imposed COVID-19 closure orders. *See, e.g.*, *Derek Scott Williams PLLC v. The Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617, at *4 (N.D. Ill. Feb. 28, 2021) (term "physical loss" in insurance policy broad enough to cover the plaintiff's deprivation of the use of its business premises following imposition of COVID-19 shutdown order). But disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous. *See Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (rejecting the argument that an insurance policy term was ambiguous "on the basis of conflicting case law" interpreting the term). This view is in accordance with the many other federal courts around the country that have held that an insurance policy's "Business Income provision does not apply where . . . a government closure prohibits access to a business's premises for reasons unconnected to any change in physical condition of those premises." *Chief of Staff LLC v. Hiscox Ins. Co., Inc.*, No. 20-cv-03169, — F. Supp. 3d —, 2021 WL 1208969, at *4 (N.D. Ill. Mar. 31, 2021) (collecting cases).

### B. Civil Authority Provision

Plaintiff also alleges that the Policy's Civil Authority provision requires Defendant to cover Plaintiff's business losses caused by the COVID-19 shutdown. (Compl. ¶ 26.) That provision states:

7

> **Interruption by Civil Authority**
>
> We extend your coverage for earnings and extra expense to include loss while access to "covered locations" is specifically denied by an order of civil authority. This order must be an [*sic*] result of loss or damage to property other than at "covered locations" and caused by a covered peril.

(Dkt. 1-1 at 160.) By its plain terms, this provision applies only when (1) there is "loss or damage to property" somewhere other than the "covered locations" (that is to say, somewhere other than Plaintiff's insured premises), and (2) that "loss or damage to property" at some external location results in a government order that prohibits access to Plaintiff's premises. (*Id*.)

Plaintiff argues that the spread of SARS-CoV-2 in the United States rendered many business properties around the country "unfit for their intended use," and that this loss of use constitutes a "loss or damage to property" other than at the "covered locations," thus triggering coverage under the Civil Authority provision. (Dkt. 21 at 11.) But Plaintiff's argument fails for the same reason that its arguments related to the application of the Business Income provision fail: Plaintiff has not adequately alleged "loss or damage" to *any* property. As explained above, the mere presence of the SARS-CoV-2 at any given location does not constitute a "physical loss or damage" to that premises. *See Sandy Point Dental*, 488 F. Supp. 3d at 694 ("Just as the coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property. By the policy's own terms, the civil authority coverage does not apply"); *Chief of Staff LLC*, 2021 WL 1208969, at *5 (Civil Authority provision did

8

not apply because it "requires that the 'other property' have suffered 'damage,' and the complaint does not allege, nor does [the insured] argue, that the closure orders were due to some other property within one mile of [the insured's] premises having been damaged by the coronavirus"); *G.O.A.T.,* 2021 WL 2853370, at \*6 ("Like the Business Income and Extra Expense provisions, the Civil Authority provision requires a Covered Cause of Loss, which physical virus is not").

Even if Plaintiff had adequately alleged there were some physical loss or damage to outside property, it does not allege that any Shutdown Order "specifically denied" Plaintiff access to its own property. Because Plaintiff does not allege it was "specifically denied" access to its covered locations, the Civil Authority provision does not apply, and Defendant was not in breach of the Policy when it denied coverage on those grounds. *Accord Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.,* No. 20 CV 50284, 2021 WL 346423, at \*5 (N.D. Ill. Jan. 19, 2021) ("Plaintiff's Business Income loss is not covered under the Civil Authority coverage provisions of the policy at issue in this case because the Governor's Orders did not prohibit access to plaintiff's dental office").

### III.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is GRANTED and Plaintiff's complaint is dismissed without prejudice. If Plaintiff believes it can remedy the deficiencies identified in this order, it is given leave to amend its complaint on or before August 27, 2021. If no amended complaint is filed by that date, this dismissal will automatically convert to a dismissal with prejudice.

SO ORDERED in No 20-cv-04274.

Date: August 4, 2021

_____
JOHN F. KNESS
United States District Judge